## Case No. 2,472.

### CARTER et al. v. BAKER et al.

[1 Sawy. 512;[1]  4 Fish. Pat. Cas. 404.]

Circuit Court, D. California. March 26, 1871.

INFRINGEMENT OF PATENT—CHANGE IN FORM NOT NECESSARILY A CHANGE IN SUBSTANCE—COMBINATION—MECHANICAL SUBSTITUTE — DEFINITION—EVIDENCE—EXPERTS—MODELS AND MACHINES—IMPROVED MACHINE — GREATER USEFULNESS—MAKING MACHINE—MEASURE OF DAMAGES—DAMAGES, HOW ASCERTAINED—PROFITS—CONFUSION OF RIGHTS—BURDEN OF PROOF—STOCK CARRIED OVER—TWO PATENTS — DAMAGES APPORTIONED—OTHER MACHINES — PROFITS ON ENTIRE MACHINE.

1. Whenever a party avails himself of the invention of a prior patentee. without such variation as will constitute a new discovery, there is an infringement of such prior patent.

2. An infringement involves substantial identity. If the invention of the patentee is a machine, or an improvement on a machine, the patent will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of its mechanism, which performs the same service or produces the same effect, in the same, or substantially the same, way.

[Cited in Fisher v. Craig, Case No. 4,817; Pacific Cable Ry. Co. v. Butte City St. Ry. Co., 55 Fed. 762.]

3. The form or mechanical construction of a machine may be different from a prior machine, and the two still be, substantially, identical. The inquiry for the jury must. therefore, be, whether the defendant's device is, in substance and effect, a new and different thing, or a mere colorable evasion of the plaintiff's contrivance.

4. Where the patent is for a combination of several parts before known and used in machinery, it is no infringement to use any of the parts, where the combination is not used, or any combination of some of the parts with another, or others, substantially different from the omitted parts.

5. But if a well known mechanical substitute for the omitted part has been used in combination with the other parts, there is an infringement; for such mechanical substitute for a thing, must be regarded as the thing itself.

[Cited in King v. Louisville Cement Co., Case No. 7.798; Coolidge v. McCone, Id. 3,186; Fisher v. Craig, Id. 4,817.]

6. Where, in mechanics. one device does a particular thing, or accomplishes a particular result, every other known device which skillful workmen know will do the same thing. or produce the same result, is a known mechanical substitute.

[Cited in Norton v. Jensen, 1 C. C. A. 452, 49 Fed. 868; Wilt v. Grier. 5 Fed. 453.]

7. The testimony of experts is to be considered like any other testimony; is to be tried by the same tests, and receive just so much weight and credit as the jury may deem it entitled to, when viewed in connection with all the circumstances.

8. Rightly understood furnish very persuasive evidence on questions of improvement and infringement.

9. Although a machine may embrace a patentable improvement on a prior patented machine, yet if it embodies such prior machine. or the patented portion thereof. there is an infringement. and the patentee of the improvement cannot lawfully appropriate the prior invention, even though his own improvement is useless without such appropriation.

[Cited in American Nicholson Pavement Co. v. Elizabeth, Case No. 309.]

10. Greater usefulness is a circumstance to be considered by the jury on questions of infringement, but it is not conclusive. The point must be determined upon the whole evidence.

11. The mere making or selling. of a patented machine, is an infringement which entitles the plaintiff to maintain an action.

[Cited in Butz Thermo Electric Regulator Co. v. Jacobs Electric Co., 36 Fed. 197.]

12. The actual damages sustained, directly resulting from the infringement, is the amount to be recovered.

13. The damages must be found from the evidence; not from mere conjecture without regard to evidence.

14. The plaintiff is entitled to recover the profits realized by the wrong-doer from the infringement, as a part of the damages.

15. If the party infringing has improved the machine, and a part of the profits are due to his improvement, the portion of the profits due to

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

such improvement do not belong to the owner of the prior patent; but the burden of proof rests on the infringer to show what portion of the profits are due to his improvement.

16. The actual damages may be more than the actual profits realized by the infringer, as the infringer may have sold at a much lower price than the patentee would have been able, and entitled, to sell. If so, this circumstance should be considered, and the whole profits which the plaintiff would have realized, should be given.

17. So, also, the patentee may have been unable to sell machines manufactured, in consequence of the sales of the infringing party, and have, consequently, been compelled to carry them over. If so, the interest on the capital invested in the machines so carried over, is a proper element of damages to be considered.

18. Where the plaintiff, who patents a machine, and afterwards an improvement on the same machine—his machine put upon the market embodying both inventions—sues for an infringement of the first patent only, he is not entitled to recover, as damages, that part of the enhanced price of the machine, which is due to his second patent; and the burden of proof rests upon him to show how much of the price, or profits, are due to the patent infringed.

19. Plaintiff is not entitled to recover, as a part of his damages, any loss sustained in consequence of an infringement of his patent by reason of his inability to sell other machines, than those embodying the infringed patent. The profits recovered must be the direct and legitimate fruits of the patent infringed.

[Cited in Buerk v. Imhaeuser, Case No. 2,107.]

20. The plaintiff selected certain elements and combined them into a plow which he patented. The plow could only be used as an entirety—as one machine. He had the exclusive right to make, use and vend the machine as a whole: *Held,* that he is entitled to recover of an infringer the profits on the whole machine.

[This was an action by George R. Carter and others against L. L. Carter and others to recover damages for the infringement of letters patent No. 83,283, granted to H. R. Huie, October 20, 1868.]

M. A. Wheaton, for plaintiffs.

Estee & McLaurin and A. Rix, for defendants.

SAWYER, Circuit Judge, charged the jury as follows:

Gentlemen of the Jury: As you have already been informed, this is an action for an infringement of a patent in gang-plows. The plaintiffs claim that their assignor, Huie, invented a new and useful improvement in the implement named, which was not known or used by others, at the time of his invention, and which was not, at the time of his application for a patent, in public use, or on sale, with his consent or allowance.

The improvement claimed to have been made consists in the arrangement and combination of the several simple and separate parts, described in the specifications and drawings annexed to the patent, to wit: the axletree, arm E, slotted oval, spring, slide and lever, in connection with the other parts of a gang-plow, and in the application of them in the arrangement and combination indicat-

ed, to the purpose of producing the two effects, or results named; that is to say, firstly, to elevate or depress one wheel of the plow, so that the two wheels shall run upon different planes, as one upon the unplowed land, and the other on a lower plane in the bottom of the furrow, in such a manner, that, by means of the contrivance, the body of the machine, including the driver's seat, and the plows, shall still maintain a level, or horizontal, position; and, secondly, to enable the driver, from his seat, at will, and without delay or change of position, to depress or elevate the plow to the required depth in the ground, or elevate it entirely above the ground, and fix it in the required position.

The claim, and the patent, are for an arrangement, or combination of elements and devices, before known and separately used, into one improvement in the plow, by which, it is claimed, that the two results sought are more readily, expeditiously, conveniently, and better accomplished.

Your first inquiry, gentlemen of the jury, will be, whether the plaintiff's assignor first made the combination as claimed, and whether, when made, it constituted a new and useful improvement in gang-plows. Upon this point, the patent itself is prima facie evidence in favor of the plaintiffs. But the question is to be determined upon all the evidence in the case; and, from an inspection and comparison of the model of the plow, and its mode of operation, with those of plows before in use, and the testimony of witnesses introduced on both sides, I apprehend you will have little difficulty in coming to a correct conclusion on this head.

If you find for the plaintiffs on this point, your next inquiry will be, whether there has been an infringement on the part of the defendants. In the language of another, "An infringement takes place whenever a party avails himself of the invention of the patentee, without such variation as will constitute a new discovery. * * * An infringement involves substantial identity, whether that identity is described by the terms 'the same principle,' 'same modus operandi,' or any other. It is a copy of the thing described in the specifications of the patentee, either without variation, or with only such variations as are consistent with its being in substance the same thing." No certain, definite rule can be stated by which to determine unerringly, in every case, what will amount to substantial identity. The jury, guided by general principles, must determine each case upon its own circumstances. If, however, "the invention of the patentee be a machine, or an improvement on a machine, it will be infringed by a machine which incorporates in its structure and operation the substance of the invention; that is, by an arrangement of its mechanism, which performs the same service, or produces the same effect, in the same, or substantially the same, way."

The question is, whether the given effect is produced, substantially, by the same mode of operation, and the same combination of powers and devices in both machines; mere colorable, or evasive, differences cannot defeat the right of the original inventor. The inquiry, therefore, should be, whether the defendant's device is in substance and effect a colorable evasion of the plaintiff's contrivance, or whether it is really a new and substantially different thing. If the defendants have taken the same general plan, and applied it to the same purpose, and produced the same effect, in substantially the same mode, although they have varied the form of construction merely, it will still be substantially, in contemplation of the patent law, the same thing; otherwise, it will not. Whether or not one machine is an infringement of another, therefore, does not, necessarily, depend upon whether the mechanical constructions are different. But the question is, whether (whatever be the mechanical construction), the later machine contains the means or combination found in the previous machine; whether, taking the structure as you find it, you see the new idea completely embodied in it. In this case, the plaintiff's patent is, substantially, for a combination of parts before separately known, and used in machinery, and, since this is so, it is no infringement to use any of the parts, where the combination itself is not used, or any combination of some of its parts with another substantially different from a third element, or part, described in the specifications of plaintiff's patent. But, if the defendants have only varied their combination, by employing well known mechanical substitutes for some one or more material elements, or parts, of the plaintiff's combination, then there is an infringement, for a mere known mechanical substitute for a thing, for the purpose of determining the question in issue, must be regarded as the thing itself.

It must be apparent to you, gentlemen, that counsel regard the question of mechanical substitutes as having an important relation to this case, even if it does not present the point upon which the principal strain in the decision of the whole case is, ultimately, to come. I, therefore, invite your special attention to that aspect of the controversy, and to the definition of these terms, which I shall now give, and as stated in other portions of the charge and instructions submitted to you.

When in mechanics, one device does a particular thing, or accomplishes a particular result, every other device known and used in mechanics, which skillful and experienced workmen know will produce the same result, or do the same particular thing, is a known mechanical substitute for the first device mentioned for doing that thing, or accomplishing that result, although the first device may never before have been detached from its work, and the second one put in its place. It is sufficient to constitute known mechanical substitutes, that, when a skillful mechanic sees one device doing a particular thing, he knows the other devices, whose uses he is acquainted with, will do the same thing.

To apply these general principles to the machines in question, let us examine them for a moment. In this, the Huie machine (illustrating by the machine), we have the crank axletree, which is one of the parts in the combination and arrangement claimed in the patent, and consists of this whole implement, extending from the end of the spindle outside the wheel, to the outer end of the other spindle outside the wheel. This axletree is again composed of several parts, a shaft in the middle, here, these two arms which form the cranks, and these spindles connected with the arms, upon which the wheels revolve. That is one of the parts of the machine, composed of the several elements named. One of the elements, this arm of the axletree, is composed of different parts, also, one of which is this slotted oval, and the other, this movable arm, called E, in the specifications, lying by the side of the slotted oval.

Another element in this combination constituting the improvement, is the lever, with the spring and slide, or catch, and the segment, which is notched, and into which the slide or catch drops for the purpose of holding the plows in their position at the desired level.

The two results effected by the combination and arrangement of these elements and parts, are, as you have already seen, firstly, by the movement of this lever backward or forward, to elevate or depress the plows to the desired level, and there fix them by the spring and slide; and secondly, by a combination of the slotted oval and movable arm, called E, to form a single adjustable arm, which can be fixed when the plow is in use, by means of which, the party using the plow, is enabled to raise or depress one wheel above or below the other, so that they shall run upon different planes, as one upon the unplowed land and the other in the furrow below, or on a side hill, without affecting the level of the body of the machine, or the plows. Those are the two results to be accomplished. It will be perceived that this arm called E is not, of itself, fixed to the shaft of the axletree, but revolves upon the shaft like a swivel. For the purpose of elevating the plow, a fixed arm, composed of a single straight piece of iron welded, or otherwise permanently attached to the shaft, like the other arm of the axletree, is all that is necessary, if no other result was contemplated by the combination.

But another result is contemplated to be performed, in part, by the same arm of the axletree, as that used in raising the plow, and for the purpose of that other result, on-

ly, in the combination adopted, the arm is not permanently fixed to the shaft. A fixed arm, however, is necessary to effect the result of raising the plows, and the fixed arm is obtained by tightening a nut on the end of a bolt projecting from the movable arm called E, and passing through the slot in the slotted oval. Thus, the arm E and slotted oval, held together by the tightening of the nut, together constitute a single fixed arm—the two together constituting one of the two fixed arms of the crank axletree.

In the Sursa plow, instead of employing the combined arm of two pieces united in the machine, as just shown in the Huie plow, a segment arm—a single piece of iron, the outer end being in the form of a segment—is used for performing the same functions, but the segment arm acts as a single fixed arm for the purpose of effecting the result of raising the plow, and for that purpose might, also, as well be a simple, straight piece of iron.

You will perceive that the arms of these two plows are in the same relative positions, and in the Sursa plow the segment arm is substituted for the combined arm, composed of the arm called E and the slotted oval in the Huie plow. In both machines, the operation of raising the plows, then, is essentially performed by an axletree with a crank at each end in the same position relatively to the rest of the plow, the arms of which are fixed, and for that purpose, might as well be a simple straight piece of iron, like the other arm in the Huie axle moved by a lever attached to the axletree. But the arm of the Huie plow is, in fact, composed of two pieces combined, while the corresponding arm in the Sursa plow consists of a single piece of peculiar shape, the difference in the mechanical construction, and fixing of these arms, being made for the purpose of another result, and having no reference to the operation of raising the plows.

We will now consider the arrangement with reference to the other result to be attained, viz.: the elevation, or depression of one wheel above, or below, the other, so that the two wheels may run upon different planes, as one in the furrow, and the other on the unplowed land, or in plowing upon a side-hill, without affecting the level position of the plows and body of the machine. It is to accomplish this result, that the arm of the Huie plow is composed of two pieces, the slotted oval, and the arm, called E. This is accomplished by loosening the nut on the end of the bolt projecting from this arm, E, through the slot, and sliding the bolt along through this slot the required distance, and fixing it again by tightening the nut at another point on the slotted oval. The effect of this change, you will perceive, is, to set this arm at a different angle from the shaft from that which it occupied before relatively to the fixed arm at the other end of the axletree, and thereby elevating one

wheel with reference to the other, and changing the planes upon which they respectively run.

This same result is effected in the Sursa plow by the segment arm, by taking out the spindle from one of these holes in the segment of the arm, and inserting it in another hole, at a different part of the segment, corresponding to the different point at which it is fixed in the slot of the slotted oval in the Huie machine. You will observe that the segment arm, and the slotted oval, are both segments in the same relative portions of the corresponding arms of the respective plows, and that the change is made by moving the spindle along the segment of similar circles similarly situated. If the intervening space between the two holes in the segment arm should be cut out on a circle, there would be a slot similar to that in the slotted oval. In one, the end of the bolt passes through the intervening space, in the slot, and is fixed at the required point, and in the other, the spindle is taken out of the hole and passed over the corresponding space to the other hole, and inserted again. The result in both is to change the spindle from one point in the arm to another. The means of making these rigid are different, one being tightened by a screw, and the other fixed by means of a square hole with the spindle made square to fit it, so that it cannot turn or move. Now what is the mechanical operation by which the result of changing the planes of the wheels is accomplished in both machines?

Stated in the simplest form, I think you will find it to be this in both. It is simply changing the spindle, upon which one wheel revolves to a different point in the arm forming one of the cranks in the axletree. To effect this purpose, both machines have a crank axletree in the same general position and form—both have an arm in the same position with which the spindle is connected. The outer end, or part, of the arm in both, is spread out into the segment of a circle, in order to give room for changing the position of the spindle in the end of the arm from one point to another.

In one, there is a slot in the form of a segment, through which the bolt passes in making the change; in the other, there are holes at different points on a similar segment of a circle, and the spindle is' changed from one to the other, and thus the spindle is changed in both from one point in the arm to the other. This is essentially the operation performed, and the result, when the change of position is made, seems precisely the same in both machines.

The only difference is, in the construction of the arm itself, and the consequent difference in making the change, and fixing the arm after it is made.

As we have seen, the arm in one is composed of two parts, in the other of one, as already described, and I think it will be

manifest to you, upon inspection of the machines, that the arm on the Sursa machine may be taken off and substituted in the Huie machine for the combined arm of that machine, and fixed by ordinary known means by an ordinary mechanic, so as to perform its functions in that machine.

But of this, you yourselves are to judge upon inspection and evidence. It is your province, not mine, to determine that fact. There is, undoubtedly, a manifest difference in the mechanical construction of these two arms, and the question for you to determine in this connection, is, whether the segment arm in the Sursa plow can be regarded as a known mechanical substitute for the slotted oval in analogous, or similar combinations, in machinery, as, for instance, for changing a spindle in a machine, from one point to another, and which a mechanic skilled in his art, from a knowledge of his art, and of these devices, as used in machinery, could from that knowledge, simply, upon looking at the machine, substitute the segment arm in the Sursa plow for the combined arm in the Huie plow; that is to say, are the segment arm used in the Sursa plow, and the slotted oval in the Huie plow, devices known to mechanics, as devices used in machinery, for performing similar offices, and used as substitutes one for the other—the devices, and the uses of which, mechanics skilled in their business, know, or ought to know; and could a mechanic, skilled in his trade, from a knowledge, merely, of the devices, and their uses, upon looking at the Huie machine, and seeing the slotted oval, and arm E, combined to form an arm adjustable for the purpose of changing the spindle from one point of the arm to another, substitute the segment arm for the same purpose.

Could a skilled mechanic, after the inspection of the Huie machine, and seeing the desired result and mode of accomplishment, so far as the arm is concerned—that is to say, by changing the spindle from one point in the arm to another—from his knowledge of the devices themselves, as used in other machines, and the cases in which one is a substitute for the other, from that knowledge, merely, pass from one to the other, and substitute the segment arm of the Sursa plow for the combined arm in the Huie plow? If so, then the former is but a known mechanical substitute for the latter, and is substantially the same thing, within the meaning of the law applicable to patent rights, and the substitution of it in the Sursa plow, for the other in the Huie plow, does not constitute a new invention, or discovery, or prevent its being an infringement of the Huie patent.

I will here remark that the segment arm, as a device in this combination for effecting the change in the planes of the wheels, is not claimed as new, or the invention of Sursa, in the Sursa patent. It is, therefore, for this purpose, although used, treated as though it was old. Yet for the other purpose of elevating the plow, unconnected with the purpose of changing the planes of the wheels, the device is not needed; for, we have seen, that a simple straight arm is sufficient for that result.

As to the other portions of the machine, by which the plows are brought to the desired elevation, and fixed in the position—this lever, spring and slide, and this segment of a circle. The lever in both machines, you perceive, is placed near the seat of the driver, on his right, so that he can operate it from his seat without change of position. Both are connected with the crank axletree. By moving the lever backward and forward, the drivers in both elevate the crank axletree upon which the plow is rested, and thus the plows, in both machines, are elevated in the same manner.

In the Huie plow, there are notches at different points along the periphery, or upper edge of the segment. Attached to the lever here, is a spring and slide, or catch. As the lever is moved back and forth by the driver to the required position, the spring presses the slide, or catch, into the notch, on the segment, thus holding the lever in the place, and maintaining the plow a ⌐e desired elevation.

Upon the Sursa plow, also, there is in the combination a segment notched on the side, instead of on the top, as in the Huie plow. The lever, also, has a spring attached, and a catch on the side of the lever, to fit into the notch, but the catch is fixed, and the spring, instead of pressing a movable slide vertically into the notch, presses laterally upon the side of the lever, as it moves back and forth, and, in that mode, forces the catch upon the lever into the notch on the side of the segment, thus, also, holding the plows at the required elevation. Each plow then has a spring, catch, and notches in the segment, to perform the same office of holding the lever in the proper position for maintaining the plows at the desired elevation. But there is a difference, also, in the mechanical construction of these devices for performing this function in the two machines, and this is the other principal point upon which the contest hinges. The question here for you to determine, also, is, whether these different forms of construction of these devices are, or not, well known substitutes in machines for the other corresponding forms or devices used in the Huie plow.

Is the form adopted in the Sursa plow, a well-known device in mechanics for securing a lever, or for analogous purposes, as, for instance, securing the lever that operates the brake upon a wagon, and holding it in its position, so that a mechanic, well skilled in his trade, would or ought to know the device, and its uses, and by looking at the Huie machine, from his mere knowledge of his art, of the device and the uses to which it is applied in mechanics, be able to pass from

the one to the other, and substitute it for that in the Huie machine, without exercising the faculty of invention, or discovery of something new, or without experimenting upon it, to ascertain whether the device would work, or not, to produce the same result. If so, then, it is but using a known mechanical substitute for one of the parts in the combination, and it is, substantially, the same thing as that part, and will not protect the defendants from the charge of infringement.

But if, on the other hand, this is not a device known in mechanics, for accomplishing similar results in machinery, and would require the discovery of something new, the invention of something not before known, or before used in machinery for any similar, or analogous purpose, then its contrivance and application to the purpose indicated, is not the mere substitution of a known mechanical substitute, and is not an infringement.

Gentlemen of the jury, we have, then, two plows, of about the same dimensions, of the same general construction and appearance, both carried on two wheels. Each has a bent axletree located in the same general position, which axletree, when considered with reference to the result of raising the plow, with both wheels running on the same plane, is composed of a shaft, two fixed arms of equal length at right angles with the shaft, and parallel with each other, and a spindle, fixed in each arm, upon which the wheel revolves. The revolution of this shaft, by means of a lever, operates in both precisely the same way, to raise and depress the plows. With reference to the other result, of changing the planes of the wheels, this is effected, in both, by changing the spindles upon which the corresponding wheels in the two machines revolve, from one point to another, and fixing them there, in the corresponding crank-arms in the two axletrees.

When the spindles are thus changed and fixed, the two effects of changing the planes of the wheels, and raising or lowering the plows, are performed by both machines in precisely the same way. The arms of the axles, in both machines, used for effecting the changes in the planes of the wheels, as arms only, are in the same position, and perform all their functions with reference to both results, as simple arms, exactly alike.

The arms, as simple, single arms, are similar in shape, both of them spreading out, like a fan, into a segment of a circle at the outer end, so as to give room for a change of the position of the spindle from one point to the other, for the purpose before indicated.

But the mechanical construction of the arms is different, one being composed of two parts combined to form a single fixed arm, and the other of one; and the modes of changing the spindles from one point to another, and fixing them, are different. The levers and the plows are fixed in the desired positions by means of a notched segment, catch, and spring, in both plows, but of different mechanical construction.

These, when the machines are analyzed, I apprehend, will be found to constitute the only differences between these plows, so far as the questions for you to determine are concerned; and it is for you to determine, whether these differences are substantial, or are only formal, and evasive, arising from employing in the Sursa plow, in the place of those specific parts, or devices, of Huie's combination, other known mechanical substitutes therefor. If substantial, then there is no infringement; but, if merely formal and evasive, and not substantial, there is an infringement.

These are the questions, gentlemen of the jury, for you to determine from the evidence. The testimony of the experts which has been introduced, you are to consider like any other evidence. You are to try it by the same tests that you apply to the evidence of other witnesses, and give it just such credit and weight as you deem it entitled to, from all the circumstances, and no more. You have the models of the various machines before you. These, I think, are readily comprehended, and rightly comprehended, they afford very persuasive evidence.

If, from the whole evidence, you are satisfied that the differences between the Sursa and Huie plows are mere changes of forms, accomplished by substituting, in some of the parts of the combination, mere well-known mechanical substitutes, without any substantial alteration in their real structure, then the plaintiffs are entitled to a verdict on this point. If, on the contrary, they are substantially different combinations of mechanical parts to effect the same purpose, then you must find for the defendants as to these points. It rests with you, gentlemen, to determine these questions of fact, from the entire evidence before you. The law you will take from the court; the facts you will determine yourselves.

I will add that it does not necessarily follow, because a subsequent machine is better than or an improvement on a prior patented machine, that it is not an infringement. It may, or may not, be an infringement, depending upon whether the better or improved machine embodies the old machine. It may contain the whole substance of the first machine, and something more, or be constructed of an improved material, which renders it better and more useful, and makes it the subject of a patent in these particulars. Yet, if it embodies the prior machine, or combination, or improvement, or the patented portion of it, there is an infringement, and the inventor of the improved machine cannot appropriate the prior invention without being liable for infringement, even though his own improvement is useless without such appropriation of the prior patented machine, or patented part of the machine.

The greater usefulness of a machine, the

jury is entitled to consider, as a circumstance tending to show a different construction, but not conclusive, and whether the new machine is substantially different from the old, must be determined upon all the evidence bearing upon the point.

These are the only points, except on the question of damages, upon which I deem it necessary to give you any special instructions. Upon the other points in controversy, not specially referred to, if any there be, I think you will find no difficulty in reaching a correct conclusion.

I have not designed to express, or intimate, my own opinion upon controverted facts, although it would not be improper for me to do so with proper caution. But if you should imagine that you perceive any intimation of my opinion upon the disputed questions of fact in issue, whether you do or not, you are not to be controlled by such intimation; but you are to determine all disputed facts for yourselves from all the evidence in the case. The ascertainment of the facts is the exclusive province of the jury.

If you find for the plaintiffs on the question of the validity and infringement of their patent, it will be necessary for you to find the amount of damages sustained. On this point the verdict should be for the actual damages, which the evidence shows the plaintiffs to have sustained in consequence of the infringement of their patent by defendants—the damages directly resulting from the infringement. That will be the rule of damages. You will ascertain the amount, as near as you can, from the evidence before you. The damages must be found from the evidence, not from mere conjecture independent of the evidence.

The mere making of a machine, or the selling of a machine to others to use, or the use of a patented machine, is an infringement of the patent. Of course, for the mere making, without selling, or using the machine, the damage would be nominal; but still it is an infringement, and if nothing else was done, the holder of the patent would be entitled to recover nominal damages. But, in this case, large sales are shown to have been made by defendants, since the plaintiffs became the owners of the patent, and the damages alleged are large; and if there is an infringement, the plaintiffs are entitled to recover the whole amount of damages proved to have been sustained, be it large or small.

Evidence of the amount of damages has been given by the plaintiffs, and from the evidence you must determine the damages sustained. The profits made by the defendants in selling the machines are proper to be given, as a part of the damages; for the right to make and vend the patented machine, being the plaintiff's property, the profits resulting from the sale of it, ought to belong to them. But as mere profits, the plaintiffs are only entitled to the profits of the sale of their machine, as patented. If the defendants have improved their machine, and if any of the profits are properly credited to defendants' improvement, they do not belong to the plaintiffs; but as the defendants have wrongfully connected the plaintiffs' improvement with their own, and they caused the confusion of rights, if any portion of the profits are properly to be credited to the defendants' improvements, the burden rests upon them to show affirmatively that fact, and how much of those profits ought to be credited to this improvement and deducted from the profits of the sale of the whole machine as improved.

You are also entitled to take into consideration the fact that the plaintiffs, by the infringement, may have sustained other damages beyond the profits actually received by the defendants.

The plaintiffs may have chosen to sell at a higher rate, and they were entitled to sell at a higher price, if they were able to get their plows off in the market at higher prices. But, with reference to this question, the jury should, also, take into consideration the probabilities, as developed by the evidence, as to whether, if the defendants had not infringed the patent, the plaintiffs would have been able to sell as many machines at a higher price, or as many at any price, as have been sold by both plaintiffs and defendants together.

So, also, if the plaintiffs have manufactured machines under the infringed patent, which they could have sold but for the acts of defendants in unlawfully selling the same machine, and which in consequence of such unlawful acts of defendants, they were unable to sell, and were compelled to carry over, they would also be damaged to the extent of the value of the use of the capital invested in such manufactured machines, during the time they were compelled to carry them in consequence of such unlawful acts of the defendants.

If further improvements have been made in the plaintiffs' machines, and subsequently patented, and if the plaintiffs, during the time of the alleged infringement, manufactured and put upon the market plows embodying the first patent, and, also, the improvement covered by the second patent, they are not entitled to recover, as damages, that portion of the price which they might have obtained that is due to the greater value of the machine occasioned by combining the last improvement with the first.

The plaintiffs have sued only, for infringement of the first Huie patent, and their recovery must be limited to the damages arising from the infringement of that patent alone, and the part of the price for which they could have sold due to that patent alone, is all that the jury can take into consideration on this branch of the damages. And I will further add, that if the plows claimed to have been carried over by plaintiffs, in consequence of the infringement by defendants, did not embody in their con-

struction, the patent infringed, then the plaintiffs are not entitled to recover. as a part of their damages, for the use of the capital invested in their construction, nor in any event are they entitled to recover for the use of so much of the additional cost of the plow, if any there be, due to introducing the further improvement made under the second Huie patent. The plaintiffs are not entitled to recover. as a part of the damages, any loss sustained by reason of their inability to sell the Pfiel plows. or any other plows than those made under or embodying the patent infringed. Their profits must be the direct and legitimate fruits of that patent. They may have sustained damages from this source, but they are too remote. It rarely happens, that all the damages, incidental and remote, resulting from a wrongful act, are permitted to be recovered by the law. Only those damages which directly and immediately flow from the wrongful act, can be considered. Remote consequential damages must be discarded.

I instruct you, therefore, that you will not include damages resulting from the dealing of the plaintiffs in other machines than those embodying the patent infringed—the first Huie patent. And whether these machines carried over by plaintiff embodied that patent, and, to what extent the loss sustained by carrying them over, is due to that patent, and what to the additional cost of improvements introduced under the second patent, are for you to determine, so far as you can, from the evidence.

The burden of showing the extent of the damage, if any, arising under this. as under other heads, is on the plaintiff. Defendants insist that, as the plaintiff's grantor only patented the improvement of a plow, they are, therefore, only entitled to recover the profits due to the particular improvement, and not the profits on the whole plow.

But, gentlemen. the patent is not for an improvement on any one specific, or particular plow. It does not appear that any particular plow was selected. and an improvement made on that plow.

But the patentee. so far as appears from the evidence, selected certain elements before known, and combined them and applied them to other parts of a plow constructed after his own fashion, and made the plow in question as a whole. The plow as constructed is his machine. It does not appear, that that particular plow could be employed for any useful purpose without his improvement connected with it. Beyond the mere profits of manufacturing the machine, the profits in the plow must almost necessarily be all due to the patent for the improvement. It is that which fixes the price beyond the expense of manufacturing. At all events, the holder of the patent, alone, is entitled to make, use and vend the machine as a whole, and he must, therefore, necessarily, be allowed the profits on the whole machine.

In my judgment, from the attention I have been able to give this point since it was raised, if there is an infringement, the plaintiffs are entitled to recover the profits made upon the entire plow. and not merely on the part constituting the improvement. If I am wrong, the error, as well as any other errors I may commit, will be corrected elsewhere.

Gentlemen, I do not know that I can say anything further to aid you in arriving at the proper amount of damages. You must take the evidence as you find it, and consider it in the light of the principles I have just stated, and fix the amount from the evidence, according to the best of your ability, remembering that the plaintiffs are entitled to recover, if at all, the full amount sustained resulting directly and immediately from the infringement. and no more.

You will find the damages for two periods: Firstly, from the fifth of January, 1869. to the twenty-seventh of September, 1869; and, secondly, from the fifth of January, 1869, to the present time. The latter will. of course, be arrived at by adding to the damages for the first period. the amount accruing since September 27, 1869. If you find for the plaintiffs, your verdict will be: We, the jury, find for plaintiffs, and assess the damages from January 5, 1869. to September 27, 1869, at ——— dollars, and the damages from January 5, 1869, to the present time, at ——— dollars. If you find for defendants, you will simply say: We find for defendants.

NOTE [from original report in 4 Fish. Pat. Cas. 404]. The jury found a verdict for the defendants.