---

### LUBBE v. HILGERT et al.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

1. PHYSICIANS AND SURGEONS (§ 15*)—LIABILITY FOR MALPRACTICE.

Where the undisputed evidence shows that the tubercular disease of plaintiff's hip joint had progressed so as to be considered incurable before defendant undertook its treatment, defendant cannot be held liable for failure to effect a cure, though he represented that he could do so.

[Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 15.*]

2. PHYSICIANS AND SURGEONS (§ 18*)—ACTION FOR MALPRACTICE—SUFFICIENCY OF EVIDENCE.

Evidence *held* insufficient to show liability for malpractice in defendant's treatment of plaintiff's diseased hip.

[Ed. Note.—For other cases, see Physicians and Surgeons, Dec. Dig. § 18.*]

3. TRIAL (§ 206*)—INSTRUCTIONS AS TO WEIGHT OF OPINION EVIDENCE.

Though it is proper to caution the jury as to the weight to be given expert testimony, and to instruct that the weight of an answer to hypothetical questions depends on whether the facts recited therein are established by the evidence, and on the knowledge, accuracy, and honesty

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the witnesses, the jury should be instructed that the testimony of physicians as to what they have seen and observed or with respect to their opinions on an assumed state of facts is to be weighed by the jury the same as other evidence.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 206.*]

Appeal from Trial Term, New York County.

Action by Henry Lubbe, an infant, against Mathew Hilgert and the Hilgert Curative Footgear Institution. Plaintiff had judgment, from which, and an order denying a new trial, defendants appeal. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Paul Armitage, for appellants.

Theodore T. Baylor (Louis Stuecke, on the brief), for respondent.

LAUGHLIN, J. This is an action in the nature of an action for malpractice brought against the defendants on the theory that they hold themselves out to practice medicine, and that they assumed to prescribe for and treat plaintiff, and were guilty of malpractice in so doing.

The defendant corporation was incorporated under the laws of the state of New York on or about the 3d day of March, 1902, for the purpose, among other things, of manufacturing "boots, shoes and general foot wear and external mechanical appliances for the restoration of health to the human body," and to erect, equip, conduct, and maintain such "buildings and establishment as may be suitable for the needs and purposes of the corporation and for the accommodation and comfort of its patrons and customers." The defendant Hilgert is the president and general manager of the corporation. Its place of business is at No. 31 West Twenty-Sixth street, borough of Manhattan, New York. On its letter heads are printed "Locomotor Ataxia," "Paralysis," "Rheumatism," and "Gout" in a manner to indicate that it manufactures or sells footgear or other external mechanical appliances for the treatment or alleviation of those diseases. Of course, the corporation cannot practice medicine, and it appears that the defendant Hilgert is not a licensed physician. No question, however, with respect to the correct theory of the liability of the defendants, is presented by the appeal, for upon the trial the plaintiff elected to proceed against them upon the rule of liability applicable in an action against a physician for malpractice, and that course was followed without objection. The action as developed by the evidence adduced upon the trial is brought to recover damages alleged to have been sustained by the plaintiff in consequence of advice received from the defendant Hilgert, representing the defendant corporation, and acted upon, which resulted in the abandonment of the use for the time being of a brace for his right hip which had been prescribed for a disease of the hip from which he was suffering, it being claimed that the abandonment of the use of the brace resulted in aggravating and spreading the disease. The plaintiff has recovered a ver-

dict of $3,000. It was alleged that the defendants were also guilty of malpractice in prescribing certain shoes and massage treatment for plaintiff, but there was no evidence that his condition was materially affected thereby. The principal grounds assigned on the appeal for reversal are that the verdict is against the weight of the evidence, in so far as the jury have found that any damages were caused by the defendants, and that the court erred in instructing the jury with respect to the weight to be given to the medical evidence.

When the plaintiff was seven or eight years of age—neither time nor age is stated with accuracy—a wagon on which he was riding with his father collided with an elevated pillar, precipitating him to the street, which immediately caused soreness and lameness, and later on he suffered pain in his right knee, which appears to have been attributable to the accident, and some time in the year 1901—probably a year and a half after the accident—he was taken to the Roosevelt Hospital where a plaster cast was put on his "back and all over" and after a time—the period is not given—he was taken to the New York Orthopedic Hospital, where the plaster cast was removed and a brace was applied to the spine and the right hip, and he was treated there for a period of eight months, and during the six weeks of it he was in bed. He was then taken home, but went to the dispensary from time to time during the years 1902, 1903, and 1904 for treatment, and during that time was able to be about with the use of the braces, but walked lame, and he testified that he suffered no pain, and in the latter part of the year 1904 and forepart of 1905 he attended a school for crippled children and a public school, and was so attending school in the month of March, 1905. On or about the 7th day of March, 1905, his mother brought him to the defendants for treatment. He was then suffering from tubercular hip joint disease, which originated in his right knee, and was caused by or resulted directly or indirectly from the accident. According to the testimony of the medical experts, there are three stages of what is known as tubercular hip joint disease, and, when the patient reaches the third stage, it is incurable. According to the testimony of the mother of the boy, an abscess appeared on his right hip about five months before she took him to the defendants, and it remained and was there at that time. The evidence is uncontroverted that the third or final stage of this disease is manifested by abscesses. They are caused by the decay of the bone. The uncontroverted evidence is that this disease had progressed to its third stage some time before the defendants were applied to for treatment. Upon no theory, therefore, could the defendant be held liable for not curing the plaintiff, although there is evidence tending to show that they represented that they could do so; and the only legal ground of complaint, if any, is that by their treatment or neglect to properly treat him they aggravated his condition or caused him pain which he would not have suffered.

The evidence viewed in the most favorable light to the plaintiff with respect to the action of the defendants merely shows that they assumed to treat the boy and held out encouragement for his recovery; that they attributed the abscesses to the brace which he was wearing on the right hip and advised its removal, and that it was taken off

and left with them; that they applied certain shoes of their manufacture which they represented had curative properties and advised massage, and 12 treatments were given by a masseur who rented an office of them, and was called into the case by them; that, acting upon their advice, the brace was left off until the latter part of May, when the plaintiff's condition became worse by manifestations of the spread of the disease to the left hip, shown by pain in his left knee and hip, and the parents of the boy, becoming dissatisfied with the treatment of the defendants and discouraged, returned the shoes, and obtained the brace from the defendants. Two days after the boy left the defendants, he returned to the New York Orthopedic Hospital for treatment, and remained there for a period of six weeks. The physician in charge, who apparently was familiar with the case and had prescribed for the plaintiff when at the hospital before, ordered the right brace put on the left hip, but no brace was put on the right hip until January thereafter. After being in the hospital about six weeks, the boy was taken home and then to the country for two weeks, and on his return from the country was unable to go to the hospital, and was treated at home for a while. The course of treatment at the hospital down to December, 1905, and the plaintiff's condition during that time, were not given by the physicians, but the plaintiff and his mother gave some general testimony with respect thereto. The effect of their testimony, in the light of the medical testimony, is that the disease had then spread to the left hip, and an abscess also formed there, and abscesses appeared at other points.

There was no evidence to show that the shoes or massage prescribed or advised by the defendants aggravated the condition of the plaintiff or retarded recovery. The only theory under the evidence upon which a recovery could be predicated at all is that the defendants assumed to treat the plaintiff as a physician, and were guilty of malpractice in removing the brace from the right hip, and that this aggravated his condition. The plaintiff followed the treatment prescribed by the defendants for a period of less than three months, and, although he immediately consulted regular practitioners and placed himself in their care at the hospital, it appears that the physicians in charge of the hospital did not deem it proper to replace the brace on the right hip for a period of more than seven months thereafter. There is evidence tending to show, and sufficient to warrant a finding, that the proper treatment of the plaintiff at the time he first went to the defendants and during the time he was wearing the shoes prescribed by them was to have him wear the brace on the right hip, and that leaving it off would tend to spread the disease; but there is no evidence that it did in fact aggravate the plaintiff's condition or spread the disease in his case, or that the tuberculosis could not have extended to the left hip in the ordinary course of the progress of the disease as soon as it did, if the plaintiff had worn the brace during the period during which the defendants had charge of his case. There is no basis, therefore, for the finding that the defendants are responsible for damages to the extent of $3,000, and the verdict is clearly against the weight of the evidence. Sufficient has been stated to show that the right of the plain-

tiff to recover must necessarily depend upon medical evidence, for the question is to what extent, if any, the failure of the defendants to properly treat the plaintiff aggravated the disease from which he was suffering or increased his pain or suffering. That question can neither be decided on the testimony of laymen nor by the jurors on their own knowledge and experience without testimony. The defendants did not cause, and were not responsible for, the hip disease, and, since it was incurable when he came to them for treatment, they are not responsible in this or any form of action for their inability to cure it, notwithstanding the assurances they gave in that regard. They are only responsible on the record now before us for the pain and suffering or disability which flowed from their erroneous advice to the plaintiff to abandon the use of the brace for his hip; and, although that probably could not have been shown with precision, it should have been shown approximately to warrant a recovery. In the main charge the court failed to instruct the jury with respect to the effect to be given to the medical evidence, but, after ruling on various requests to charge, the court again addressed the jury as follows:

"Gentlemen, there is one matter that escaped my attention which I should have instructed you upon, and it will take but a few minutes. In considering the testimony of doctors, it is proper that you should look at the testimony in one or two aspects, or both, as the case may be. A doctor may testify to things within his knowledge, and the result of his own observation in treating a patient, to what he has seen, to what he has heard; in other words, a knowledge which he has acquired through the senses in his treatment. That would be what is called testimony as to facts. A doctor may also testify as to matters of opinion. These are answers to hypothetical questions; that is, a doctor may have a question put to him that assumes a certain thing to be true, and the doctor may give his opinion. That is what is called 'opinion evidence' for lack of a better term. So you will be careful to distinguish between the two classes of testimony; that is, between the class of testimony where a doctor testifies to a thing that he himself has seen or heard or observed in the treatment of this boy, and to the expressions of opinions from doctors who have not treated the boy or have not seen him. Because the law recognizes that a medical man may give his opinion to the jury, those opinions, however, do not control. They are merely for your guidance, and you can reject them or accept them just as you think proper. They do not in any way conclude you because it is only an opinion, and not evidence as to facts. Now, gentlemen, I think that is all."

Counsel for the defendants duly excepted to these instructions, and requested the court to instruct the jury in that connection, "That the testimony of Dr. Soule in part was as to tubercular cases generally, and not as to this boy individually," to which the court replied, "I decline to distinguish among any of the doctors. My instruction has reference to every doctor who has testified before," whereupon counsel for defendants duly excepted to the refusal of the court to so charge and to the statement made by the court. We are of opinion that the instructions thus given to the jury with respect to the medical evidence in so far as the same was based on the opinions of the witnesses were erroneous, and that the exception thereto was well taken. The verdict which appears to be clearly against the weight of the evidence, if there be any evidence to sustain it, may be accounted for upon the ground that the jury understood that they were at liberty to consider or reject the medical evidence and particularly that part

of it given in answer to hypothetical questions, as they saw fit. It is proper, and in many cases important, that the jury should be cautioned with respect to the weight to be given to expert testimony, and, in order that they may be able to properly weigh such testimony, their attention should be drawn by the court to the fact that, when given in answer to a hypothetical question, its weight depends entirely upon whether or not the facts recited therein are established by the evidence, and that in all cases it depends upon the knowledge, accuracy, and honesty of the witnesses, but the jury should be instructed that the testimony of physicians, whether with respect to what they have seen and observed or with respect to their opinions on an assumed state of facts, is not to be rejected or accepted at will, but is to be weighed and considered by the jury the same as any other evidence; the jury being, of course, at liberty, after weighing and considering such testimony, to disbelieve it when it is improbable or when it is discredited or disproved by other testimony in the case or when the jury believe that the witness has testified falsely or was mistaken with respect to any fact or opinion. Lawson on Expert and Opinion Evidence, p. 240; Leitch v. Atlantic Mutual Ins. Co., 66 N. Y. 100, 105; Carter v. Baker, 1 Sawy. 512, 525, Fed. Cas. No. 2,472; Gay v. Union Mutual Life Ins. Co., 9 Blatchf. 142, 153, Fed. Cas. No. 5,282; Templeton v. People, 3 Hun, 357, affirmed People v. Templeton, 60 N. Y. 643; Pannell v. Commonwealth, 86 Pa. 260, 269; Wood v. Barker, 49 Mich. 295, 13 N. W. 597.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.