WESTERN UNION TELEGRAPH COMPANY v. H. J. HUGHEY.

Decided April 22, 1909.

1.—Telegraph—Damages—Presumption.

By defendant's negligent failure to deliver a telegram, plaintiff was prevented for fifteen hours from reaching the bedside of his sick wife, who was in articulo mortis and unconscious when he arrived. Held, that the issue of damages to

him from being unable to see her while conscious was properly submitted, though there was no pleading or proof that she was conscious during the time he was delayed. Consciousness, being a normal condition, is to be presumed, and was not rebutted by its absence immediately before death.

**2.—Presumption.**

Presumptions as to the continuance of a condition shown, operate prospectively, but not retrospectively.

Appeal from the District Court of Dallam County. Tried below before Hon. J. N. Browning.

*John W. Veale* and *N. L. Lindsley,* for appellant.

*Reese Tatum,* for appellee.

HODGES, Associate Justice.—The appellee sued the appellant telegraph company for damages for failure to deliver a telegram informing him of the serious illness of his wife. A judgment was recovered for the sum of $1,400.00, from which the appellant prosecutes this appeal.

The evidence shows that Hughey, the appellee, was a drummer and lived at Dalhart, Texas; that on the evening of April 15, about nine o'clock, he left home on one of his customary trips; that at that time his wife was in good health. On the following day, the 16th, a short time after noon, the following telegrams were delivered to and accepted for transmission by the appellant's agent at Dalhart: "Dalhart, Tex., April 16, 1907. To Mr. Hughey, Texhoma, Oklahoma: Come home on No. 29; very sick. (Signed) Mrs. Hughey." Second message: "Dalhart, Tex., April 16, 1907. To Mr. Hughey, Guymon, Oklahoma: Come home on 29. Very sick. (Signed) Mrs. Hughey." Those telegrams were actually written and delivered to the agent by T. L. Swearingen, who testified that he did so in response to a request over the telephone from some lady. Swearingen lived in Dalhart; was in business there, and knew both the appellee and his wife. The appellee testifies that after leaving home Monday evening he went to Stratford, where he spent the night. He left there the next day at 12:25, passed through Texhoma but did not stop, and arrived at Guymon about 1 or 1:30 p. m. The telegram addressed to him at Guymon was received at that place by the agent in time for its delivery so that the appellee might have left for home over train No. 29 referred to in the message, and had he done this he could have reached his home at 5:30 the same evening. The telegrams were never delivered, and appellee knew nothing of his wife's illness till he arrived at Dalhart the next morning about nine o'clock. His wife was then in a dying condition; was unconscious, and lived only about thirty minutes after his arrival. The testimony was sufficient to authorize the jury to find that the failure to deliver the telegram at Guymon was due to negligence on the part of appellant's agents at that place, and is also sufficient to show that but for such negligence appellee could and would have reached the bedside of his wife about fifteen hours sooner than he did.

Practically the only question involved in this appeal is, Were the

pleadings and evidence sufficient to warrant the court in giving the following charge to the jury: "If you find for the plaintiff, you will assess the damages at such sum of money as you believe and find will reasonably compensate him for any actual damage he may have sustained on account of the grief or mental anguish of being deprived of seeing and conversing with his wife before she became unconscious, and before her death. And in such event the form of your verdict will be as follows: 'We, the jury, find for plaintiff, and assess his damages at ——— dollars,' etc." It is contended that there was neither allegation nor proof that if the appellee had reached the bedside of his wife earlier than he did he would have found her in a conscious condition. The allegations are, substantially, that when appellee left home on the night of the 15th his wife was in good health; that on the next day she became suddenly sick and caused the telegrams to be sent; that had they been delivered within a reasonable time after their reception at points of destination appellee could and would have arrived at the bedside of his wife more than fifteen hours before he did; that by reason of the negligence charged he was deprived of conversing with her during her last illness. There were also other elements of damage alleged, not necessary here to mention. The only exception to the petition was a general demurrer, and which, we think, was properly overruled by the court. The only testimony upon the point in issue is that of Swearingen and of the appellee. Swearingen stated that at about one or two o'clock on the 16th he was called over the telephone by some lady and requested by her to send the telegrams above set out. He asked her where Hughey could be found, and she told him at either one or the other of the places named in the messages. He could not say that he recognized the voice of the lady doing the talking as that of Mrs. Hughey. The appellee testified that when he arrived at the depot in Dalhart on his return at nine o'clock on the morning of the 17th, he then for the first time learned that his wife was very sick. He found her unconscious and in a dying condition, and she lived only about a half-hour after he reached her.

No burden rested on the appellee to allege or prove that his wife was conscious and capable of conversing with him had he arrived fifteen hours sooner. Consciousness is the natural and normal state of the human mind, and it will be presumed to be the mental status of all living persons until shown to be otherwise. The fact that Mrs. Hughey was sick, or even very sick, without stating the character of her illness, does not of itself furnish evidence of the abnormal condition called unconsciousness. It is true that consciousness is often lost in severe cases of illness, but the occurrence is not so common that proof of illness alone will afford a basis for the presumption of unconsciousness. Normal conditions will be presumed to exist in every instance, till the contrary is shown. The court had the right to assume, as he did, that had the appellee reached the bedside of his wife at the time he would have done so had the message been punctually delivered, he would have found her conscious and capable of conversing with him in some form, or to some extent, at least. The fact that she was unconscious and in a dying condition when he did arrive is no evidence that fifteen hours before that time she was in the same condition. Presumptions which

arise from proof of a given status or situation operate prospectively and not retrospectively. Windhaus v. Bootz, 92 Cal., 617; Bradner on Evidence, p. 627. Furthermore, in this case we think the inference is strongly suggested that her unconscious condition was due to the fact that she was *in articulo mortis* when her husband arrived.

The same questions here raised are presented in different forms under other assignments, but we deem it unnecessary to further discuss them.

We have found no error in the judgment, and it is therefore affirmed.

*Affirmed.*

Writ of error refused.