FARMERS' & MERCHANTS' NAT. BANK
OF ABILENE v. IVEY et ux. (No. 888.) *

(Court of Civil Appeals of Texas. Amarillo.
Jan. 12, 1916. Rehearing Denied
Feb. 9, 1916.)

1. DISCOVERY ⬦⟿3—EQUITABLE DISCOVERY—
STATUTE.

Vernon's Sayles' Ann. Civ. St. 1914, arts.
3679–3686, giving a party the right to examine the opposite parties as witnesses to secure information for maintaining an action or defense, superseded the bill of discovery as known to equity practice.

[Ed. Note.—For other cases, see Discovery,
Cent. Dig. §§ 3, 4; Dec. Dig. ⬦⟿3.]

2. DISCOVERY ⬦⟿70 — ORAL INTERROGATORIES
—TAKING AS CONFESSED—STATUTES.

Vernon's Sayles' Ann. Civ. St. 1914, art. 3680, allows a party to take the deposition of an adverse party, section 3682 makes it unnecessary to give notice of the filing of interrogatories, and removes any objection on account of their leading character, article 3683 provides that the answers of the party to interrogatories shall be taken and returned as other depositions, and article 3663 et seq. provide for taking testimony of witnesses by oral examination and answers. In a suit to remove a cloud from title to land the defendant filed notice of application for a commission to take the deposition of plaintiffs by oral examination, and plaintiffs appeared, with counsel, but refused to answer any of the interrogatories propounded. Held that, in the absence of statutory authority, the interrogatories could not be taken as confessed because of the failure to answer.

[Ed. Note.—For other cases, see Discovery,
Cent. Dig. §§ 84–86; Dec. Dig. ⬦⟿70.]

3. HUSBAND AND WIFE ⬦⟿119—WIFE'S SEPARATE PROPERTY—COMMUNITY PROPERTY.

In a suit to remove a cloud from title to town lots, alleging such lots to be the separate property of the wife, it appeared that the tract had been purchased with proceeds of the wife's separate property and of community property, and conveyed to the husband and thereafter conveyed by him to his wife; that they borrowed money on the property secured by a deed of trust, part of the proceeds of which was applied to the payment of community debts; that thereafter the husband and wife conveyed certain parts to each of their children, who subsequently sold the land conveyed to them and delivered to the wife the greater part of the proceeds, with which she paid off the loan. Held, that the transactions vested the title of the remaining part of the land in the wife.

[Ed. Note.—For other cases, see Husband and
Wife, Cent. Dig. §§ 172–174; Dec. Dig. ⬦⟿
119.]

4. APPEAL AND ERROR ⬦⟿1064 — HARMLESS
ERROR—INSTRUCTIONS.

In such suit, an instruction, assuming that the land in controversy contained 205 acres, when in fact it contained but 145 acres, in view of the uncontradicted evidence fixing the rights of the parties, was harmless.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig.
⬦⟿1064.]

5. HOMESTEAD ⬦⟿181—ABANDONMENT—EVIDENCE.

In the absence of any evidence from a husband as to their purpose in leaving and their intention to again occupy a homestead, the wife's statement as to such purpose and intent was competent.

[Ed. Note.—For other cases, see Homestead,
Cent. Dig. §§ 351–353; Dec. Dig. ⬦⟿181.]

Error from District Court, Hale County;
L. S. Kinder, Judge.

Suit by R. F. Ivey and wife against the Farmers' & Merchants' National Bank of Abilene. Judgment for plaintiffs, and defendant brings error. Affirmed.

Sayles, Sayles & Sayles, of Abilene, and Graham & Graham, of Plainview, for plaintiff in error. Y. W. Holmes and W. B. Lewis, both of Plainview, for defendants in error.

HALL, J. Defendants in error filed this suit to remove cloud from their title to certain town lots in Plainview, Tex., and certain lands in Lamb county, Tex. They allege that all such real estate was the separate property of Mrs. Ivey, and that certain of the lots constituted their homestead; that said real estate had been levied upon and sold by the sheriffs of Hale and Lamb counties, respectively, under executions issued on a judgment in favor of plaintiff in error against R. F. Ivey and A. B. Britton. Plaintiff in error answered, denying that any of the real estate in controversy was Mrs. Ivey's separate property, and alleging that said town lots and lands were community property, and that title had passed to plaintiff in error by the levies, sales, and sheriff's deeds. It also denied that lots 5 and 6 in the College Hill addition to Plainview constituted the homestead of defendants in error, and that defendants in error were, prior to, at the time of, and since, the levy of the execution upon said lots, residing on the Highland addition lots in Plainview, also involved in this suit. The bank also attacked a conveyance made by R. F. Ivey to his wife on October 19, 1911, of the Lamb county land, as being fraudulent and void; that it was executed when R. F. Ivey was insolvent, and with the intent to hinder, delay, and defraud creditors. The suit was tried before a jury, who found upon every issue in favor of defendants in error, and judgment was entered accordingly.

Soon after the institution of the suit, plaintiff in error filed with the clerk of the trial court a notice directed to defendants in error and their attorneys, that it would apply for a commission to take the deposition of defendants in error on June 3, 1914—

"by oral examination and answer under oath to such questions as may be propounded to them by the respective parties."

A copy of this notice was served on the attorneys of defendants in error May 23, 1914. In response to the commission and notice given by the notary public defendants in error, with their attorneys, appeared before the notary on June 5, 1914, but refused to answer any of the interrogatories propounded to them by the attorney representing the bank. The interrogatories, if taken as confessed, would require a judgment to be entered in favor of the plaintiff in error.

[1, 2] The first assignment of error is predicated upon the action of the court in over-

⬦⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Application for writ of error pending in Supreme Court.

ruling the defendant's motion to have all of the oral interrogatories propounded to defendants in error taken as confessed and judgment entered accordingly. There is no provision in title 53, c. 3, for taking the deposition of a party to a suit upon verbal interrogatories. Interrogatories can be taken as confessed only when the proceeding is strictly within the provisions of the statute. The bill of discovery, as known to the equity practice, is superseded in this state by the provisions of chapter 3, tit. 53, Vernon's Sayles' Civil Statutes. Hamner v. Garrett, 133 S. W. 1058, 1061; Cargill v. Kountze Bros., 86 Tex. 386, 22 S. W. 1015, 25 S. W. 13, 24 L. R. A. 183, 40 Am. St. Rep. 853; Smith v. Olsen, 92 Tex. 181, 46 S. W. 631. The reasonable inference to be drawn from the language of articles 3680, 3682, 3683, Vernon's Sayles' Civil Statutes, is that written interrogatories must be filed as a prerequisite to taking the depositions of a party to the suit. Article 3663 et seq., relating to the taking of depositions of a witness in a case, upon oral interrogatories, do not, by their terms, provide for taking the deposition of parties in such manner. The whole matter of taking depositions of parties and witnesses is controlled by the statute. No such practice obtains under the common law; and, in the absence of statutory authority the taking of the party's deposition as confessed, because of a failure to answer oral interrogatories, cannot be done in this state.

[3, 4] The second assignment is that the court erred in overruling defendant's first objection to the court's charge to the jury, in that, submitting the first issue to the jury, the court assumed as a fact that the land in controversy contained 205 acres, when in fact the tract of land contained only 145 acres. According to the contention of appellees their home in Abilene was Mrs. Ivey's separate property, and was valued at $4,000. This amount was invested in the land in question. The community had invested therein money from their Tuscola homestead in the sum of $1,000, and one-third of their equity in three other sections of land, amounting to $666.66; the total consideration for the section of land in question being $5,666.66. According to appellant's theory, 70.6 per cent. of this tract of land belonged to the separate estate of Mrs. Ivey, and the remainder, or 29.4 per cent. was community property and subject to appellant's debts. It seems to be conceded that instead of the tract of land in question consisting of 205 acres, it contained only 145 acres, which, if apportioned as above stated, would give to Mrs. Ivey a fraction over 102 acres, instead of 145. This error of the court was duly excepted to, and is properly presented in the brief of appellants, but under the uncontradicted evidence, it does not constitute reversible error. It appears from the record that the entire section, of which the 145 acres in controversy is a part, was conveyed first to R. F. Ivey in April, 1910, and thereafter in 1911 conveyed by Ivey to his wife. Thereafter, in 1911 they borrowed $2,500 and secured the loan by a deed of trust on the entire section. Of this $2,500, $1,300 was applied to the payment of community debts in the form of notes against certain lands purchased by the community in Cochran county, $600 was used in patenting the section of land upon which the loan was negotiated, and the remainder of $2,500 was applied to the payment of community debts. After the negotiation of the $2,500 loan, appellees conveyed to each of their five children 100 acres of the section, taking from each of them a note for $500. Subsequently their children sold the land conveyed to them, delivering to Mrs. Ivey a greater part, if not all, of the proceeds of the sale. With this money she paid off the loan. The result of these transactions is to vest the title of the remaining portion of the land in Mrs. Ivey. The community estate having been fully reimbursed, through the loan of $2,500 and its repayment, for the amount of the community, fund originally invested in the section had no further interest in it. The whole of the 145 acres, remaining after the five tracts of 100 acres each had been conveyed to the children of appellees, was, we think, the separate property of Mrs. Ivey. If we are correct in this, no part of it could be subjected to the payment of community debts, and the error of the court in assuming that 205 acres, instead of 145, remains is harmless.

[5] Under several assignments the sufficiency of the evidence to support the findings of the jury is assailed. A review of the statement of facts convinces us that the evidence required the court to submit the question of Ivey's alleged fraudulent intent in conveying the land to his wife to the jury. The detailed statement made by him, on direct and cross-examination, showing his assets and liabilities, is sufficient to raise an issue as to his solvency in January, 1911, when he executed the deed to his wife. In the absence of any evidence from the husband as to their purpose in leaving and their intention to again occupy the homestead, Mrs. Ivey's statements as to such purpose and intent are competent evidence to be considered. They had previously built a barn on the lots, in which they had resided for a time, and the statement of facts shows that since moving from the barn they nevertheless used the premises for purposes consistent with their homestead claim.

Appellant's brief contains a great many other assignments, in which the questions and issues heretofore discussed are presented in different form, and which we believe it is not necessary to consider in detail.

We find no reversible error in the judgment, and it is affirmed.