No. 22,980.

VINNIE M. RAINEY, *Appellant*, v. DEROTUS E. SMITH and R. R. NEVITT, *Appellees.*

SYLLABUS BY THE COURT.

1. MALPRACTICE — *Demurrer to Plaintiff's Evidence Wrongfully Sustained.* It is held that there was sufficient evidence, expert and otherwise, to compel the court to overrule the demurrer to the plaintiff's evidence and to submit the case to the jury for determination.

2. SAME—*Amendment of Pleadings to Correspond to Evidence.* Where parties are not misled, pleadings may be amended to correspond to the evidence introduced.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed November 12, 1921. Reversed.

*Frank R. Forrest,* of Iola, for the appellant.

*F. J. Oyler,* of Iola, *Edwin D. McKeever,* and *Arch M. McKeever,* both of Topeka, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff seeks to recover damages from the defendants, physicians and surgeons, for malpractice. On the trial, the court sustained the defendants' demurrer to the plaintiff's evidence, and she appeals.

1. The plaintiff introduced evidence which tended to prove the following facts: She was pregnant, in ill health, and consulted defendant Nevitt on a number of occasions. He made examinations from time to time and first informed the plaintiff that she had tumor in the mouth of the uterus; and later, after the plaintiff had informed him that she was pregnant, said that her condition was not due to natural pregnancy, but that, if she were pregnant, the fetus was in the Fallopian tube and must be removed by an operation or her condition would result in her death. Defendant Nevitt requested the plaintiff to go with him to defendant Smith in Kansas City for an X-ray examination which would reveal the cause of her trouble. She went to Kansas City with defendant Nevitt for that purpose, and they consulted defendant Smith who made a digital examination and said that an X-ray was unnecessary; that a blind physician could tell what was the matter; that the

Rainey v. Smith.

ailment was pregnancy outside of the uterus; and that it was necessary to have an operation at once. No X-ray examination was made. The plaintiff went to her home at Mildred in Allen county, remained there a few days, and returned to Bethany Hospital in Kansas City, where an operation was performed, and it was discovered that the plaintiff was pregnant, but that the fetus was in the uterus and not in the Fallopian tube. The incision was closed, and in a short time, the plaintiff returned to her home. Afterward, she gave birth to a normal, healthy child. After the operation, the defendants reported to the plaintiff that they had discovered a number of tumors in and about the uterus, and that after the birth of the child they must be removed. When the child was born, a hernia developed in the incision that had been made. Some months later, the plaintiff returned to Bethany Hospital and was operated on by Dr. Steman for the purpose of reducing the hernia. He made an incision, examined the abdominal viscera, and found that the Fallopian tubes and the appendix were in bad condition. They together with the ovaries were removed by him. He discovered no tumors about the uterus, but did discover some scars and adhesions on the omentum, some of which might be called tumors.

On the cross-examination of one of the plaintiff's witnesses, a physician and surgeon, he testified that there are pregnancies where unusual and extraordinary symptoms appear that are hard to diagnose, but that it is not hard to ascertain whether the condition is serious; that the conclusion might be reached that the condition is serious without knowing exactly what it is; and that then is the time to make an exploratory operation. In their brief, the defendants say:

"It is conceded here that if the defendants made a wrong diagnosis, they did not operate in pursuance to this mistaken diagnosis, but so far as the hazy evidence of the plaintiff throws any light on the subject, it appears that they made an explorative operation, on account of the seriousness of plaintiff's condition, a method which is approved by the best surgeons according to the testimony of Dr. Charles Christian, the plaintiff's own witness."

The defendants further say:

"It appears that the defendants . . . opened up the abdominal cavity for the purpose of ascertaining whether their first diagnosis was true and correct."

Recapitulating the evidence thus far briefly stated, we have this situation: an examination by one of the defendants; his conclusion therefrom that the plaintiff was suffering from extra-uterine pregnancy; his advice that an X-ray examination be made; a trip for that purpose to Kansas City where a digital examination was made by the other defendant; the latter's conclusion expressed in the following language, "We need no X-ray here. Why, a blind physician could tell what is the matter with this woman;" and then, according to the argument of the defendants, an exploratory operation to ascertain her condition.

Another physician and surgeon testified in response to questions, as follows:

"Q. Tell whether or not the skeleton of a six-months-old baby would appear clear upon an X-ray in the abdomen of a woman bearing the baby? A. A six-months-old child would show shadow I think."

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. So if you diagnosed a case by an abdominal condition and were convinced beyond a doubt, without an X-ray, that it was a case of immediate surgery, a serious case, you wouldn't bother with an X-ray? A. If I felt positive I wouldn't."

.    .    .    .    .    .    .    .    .    .    .    .    .

"A. There are pregnancies where unusual extraordinary symptoms appear.

"Q. Hard to diagnose? A. Yes, but not hard to ascertain whether the condition is a serious one.

"Q. And doctor, if the case is so clear and the diagnosis so plain that, to use the language of the man diagnosing it a 'blind doctor could tell what was the matter' an exploratory operation wasn't justified, was it? A. Not under that circumstance."

It is the rule in this state that negligence of a physician or surgeon must be proved by expert evidence. (*Sly v. Powell,* 87 Kan. 142, 123 Pac. 881; *Paulich v. Nipple,* 104 Kan. 801, 806, 180 Pac. 771.) The evidence just quoted was sufficient to satisfy the rule.

It is unnecessary to make any extended comment concerning the manner in which the defendants treated the plaintiff as their patient. It is enough to say that they made a serious mistake in their diagnosis, and that the evidence tended to show that they were negligent in not making an X-ray examination. The demurrer should have been overruled, and the evidence should have been submitted to the jury.

2. The defendants say that—

"There is no allegation in this petition of failure to use the X-ray, although part of plaintiff's case is based upon that complaint, and counsel for plaintiff in the trial objected to testimony on that subject."

An examination of the petition of the plaintiff shows that the contention of the defendants is correct; but, if the plaintiff's evidence established a cause of action, she should not be precluded from recovering by reason of her failure to make that allegation. The defendants were not misled thereby. The petition may readily be so amended and is now considered as amended.

The judgment is reversed, and a new trial is directed.