## WASHINGTON FIDELITY NAT. INS. CO. v. STEWART.

### No. 12729.

Court of Civil Appeals of Texas. Fort Worth. Oct. 29, 1932.

Rehearing Denied Nov. 26, 1932.

Hyer & Hawkins, of Fort Worth, for appellant.

G. R. Lipscomb, of Fort Worth, for appellee.

CONNER, C. J.

This is an appeal from a judgment in favor of Thomas Stewart in the sum of $204. Thomas Stewart sued as the beneficiary under a policy of insurance taken out by him in behalf of his mother, Mrs. Fannie Stewart. The application for the policy was dated May 26, 1930; the policy was issued on June 1, 1930; and Fannie Stewart died about the 15th day of June, 1930.

The policy provided, among other things, that if the insured was "not in sound health" at its date, the company might declare it void and its liability limited to a return of premiums paid thereon.

The appellant company pleaded several defenses, all of which were decided in favor of plaintiff, but only one of which are we called upon to consider by appellant's assignments of error, to wit: The appellant pleaded, among other things, that Thomas Stewart at the time of the application for the policy stated that his mother was in good health, whereas in fact she was not in good health, and that hence under the terms of the policy the plaintiff was entitled to recover only the weekly premiums paid by him, which aggregated $1.30, which had been returned.

In answer to special issues, the jury found that Fannie Stewart at the date of the application was 57 years of age, and that in fact that was her age. The jury further found that she was in good health at the date of the application and appellant's insistence is that the evidence is wholly insufficient to support the finding and judgment upon the latter issue.

The state of Fannie Stewart's health at the date of the application and of the issuance of the policy was a special defense presented by appellant, and under well-settled rules the burden was upon appellant to establish its truth by a preponderance of the evidence. The evidence is substantially as follows:

After the plaintiff had introduced the policy, proved due notice of the death of Fannie Stewart, and that the policy had been unpaid, he rested his case. Thereupon defendant, appellant here, took charge of Thomas Stewart and upon cross-examination proved by him that at the date of the application he (Thomas Stewart) lived in Fort Worth, Tex.; that his mother then lived in Navasota; that his mother had authorized him to take out a policy in her name with him as beneficiary; that he was to pay the premiums; that his mother died about two weeks after the issuance of the policy; that he was told that "she died with a stroke—paralysis."

"Q. Now I believe you stated awhile ago that you did not know whether your mother was sick or not at the time the application was made? A. No, sir, she wasn't sick when I put him in. I told him that. I told him all that he asked me.

"Q. You told him that she wasn't sick? A. I told him that."

In answer to further interrogatories the witness stated that he had not seen his mother for some two weeks before the application for the policy, and that she was not then sick.

Appellant then introduced in evidence the application card that had been signed by the plaintiff for his mother. The application stated the age of his mother at her last birthday as 51; premium, 30 cents; amount of insurance, $204; date of her birth, third month, second day, year 1880; beneficiary named, Thomas Stewart; age 37. The signature of the applicant signed, "X Fannie Stewart," witnessed by "F. L. Smith, agent," on May 10, 1930.

On the reverse side of this card, under the heading "Medical Examination or Inspection," were statements to the effect that Fannie Stewart was 51 years of age; that there were no physical or mental defects or infirmities present; that there were no reasons to suspect intemperate or immoral habits; that there was nothing about the home to impair the health of insured; that neither parent, brother, or sister, had died of consumption or pulmonary disease; that insured during the last five years had had no serious illness or injury; that the signer of these statements was satisfied that he had inspected the life proposed for this insurance and had personally witnessed the signature to the card and recommended approval of the application. This report was signed, "F. L. Smith, Agt."

Defendant introduced Dr. A. I. Goldberg, a qualified physician who had been practicing a little over five years and who was the examining physician of the company, but who had never seen the deceased, and who testified as an expert only. We quote the following from his testimony:

"Q. I will ask you, Doctor—will a general hardening of the blood vessels cause what we call, or what doctors call, apoplexy? A. Yes, sir, they will rupture and you will get hemorrhage there.

"Q. Explain to the jury just what will follow the general hardening of the arteries, what causes hardening of the arteries? A. Hardening of the arteries is due to a rise in blood pressure. The heart pumps the blood with such pressure that the elasticity of the arteries is lost and nature's effort after this is lost is to protect the arteries; in doing so, calcium salts are deposited in the coats of the arteries. After so long a time the blood pressure continues to be high and the arteries are no longer elastic, they are brittle and easy to rupture, and therefore they will rupture.

"Q. Does hardening of the arteries always follow high blood pressure? A. Yes, sir.

"Q. Doctor, state in your opinion as a doctor if apoplexy is or not sometimes caused by a general hardening of the arteries? A. Yes, sir.

"Q. Now, in your opinion, as a general rule how long would be required for a general condition of hardening of the arteries to develop to such an extent that apoplexy would have resulted? A. That would be over a period of time; I would say anywhere from one to several years.

"Q. Is it possible, Doctor, that such a condition could exist and develop in a period of nineteen days? A. No, sir.

"Q. Is it possible that such a condition could develop in six months, in your opinion? A. No, sir. It would take a period of time for an artery to become hard, because calcium salts would have to be deposited there, and it takes quite a while for nature to come in and do this, and it would take time; after the arteries become hardened, why, they then lose their elasticity as I said before, and they will rupture, and that also takes some time.

"Q. I want to ask you this hypothetical question, Doctor: In a case where a person dies with what is called a hardening—that is, what is called apoplexy, with the statement that the particular apoplexy was caused and developed from a general hardening of the arteries, in your opinion, within a period of from 15 to 30 days would that person's health be seriously impaired or not? A. Do you mean 15 days before she had a ruptured blood vessel?

"Q. Before she would die from apoplexy? A. Will you repeat that again? I didn't quite get that straight.

"Q. I will put it in a little different way: Within a period of, we will say 19 or 20 days prior to the time a person dies from apoplexy, which apoplexy had for its contributing cause a general hardening of the blood vessels, within this period of twenty or thirty days, even, would this person be seriously impaired in health? A. Yes, sir. In other words, do you mean would she be in good health?

"Q. Yes. A. No, sir, she would not.

"Q. Would she be in a serious condition? A. Yes, sir, she would be in a serious condition."

The deposition of Dr. W. W. Greenwood, taken in behalf of defendant, on September 10, 1931, was then offered in evidence. His answers developed that he was a qualified physician of some 30 years' experience; that he lived in Navasota, the town where Fannie Stewart died; that while on a call to see another party in the same house where Fannie Stewart lived, he was requested to see her, and made a casual examination sufficient to determine that she was suffering from an apoplectic stroke; that she was at the time in a semiconscious condition, paralyzed on one side.

"Q. If you have answered that Mrs. Fannie Stewart was suffering from apoplectic stroke, state whether or not, in your opinion, that condition, as it existed at the time of your examination, could have, or did, wholly develop within a period of 15 or 20 days, if you

know. A. In my opinion the apoplectic stroke could have developed within that period of time. * * *

"Q. State whether or not, if you know, the contributing cause of her condition, if there was a contributing cause? A. In my opinion, she was suffering from a general hardening of the blood vessels.

"Q. If you have stated that there was a contributing cause, please state, in your opinion, how long that, or those, contributing causes were in their development, of the condition as existed at the date of your call, if you know and remember? A. Possibly over a period of a number of years.

"Q. Please state, if you know, the direct and proximate cause of her death, if you remember? A. I do not know. * * *

"Q. It is true, is it not, that hardening of the arteries and veins is a result of age as well as some disease of a human system? A. Yes.

"Q. Assuming that a person has reached the age of 50 years and did a violent exercise, which caused an increase in the heart action and circulation of the blood, could this cause a stroke of apoplexy? A. In some circumstances, yes."

The foregoing, in substance, is all of the evidence that can be relied upon as showing that Fannie Stewart was sick at the time of the application for insurance and the issuance of the policy under consideration.

The evidence of the plaintiff, Thomas Stewart, was to the effect that he had seen his mother some two weeks prior to the date of the application; that she was not then "sick." No witness from Navasota, other than Dr. Greenwood, testified who had seen the deceased during the preceding weeks, months, or years of her life. The evidence considered in its aspect most favorable to the defendant shows that apoplexy was preceded by a contributing cause, but that such contributing cause may be something other than the hardening of the arteries with their final rupture and flooding of the brain. The answers of Dr. Goldberg to hypothetical questions assumes that the contributing cause of the apoplectic stroke of Fannie Stewart was the hardening of the arteries, but no witness testified to the truth of the assumption indicated in the hypothetical questions. It is true that Dr. Greenwood gave it as his opinion that the producing cause of the stroke was the hardening of the arteries. But he plainly indicates that this is not necessarily true; that the producing cause may have been something else.

He specifically answers that the producing cause of the stroke may have arisen between the date of the application and the date of Fannie Stewart's death. There was evidence, not yet referred to, to the effect that for three days, at least, after the date of the application for insurance Fannie Stewart was at work, with no direct evidence that for any cause she was unable to perform such labor.

■■ Appellant insists that Thomas Stewart's evidence, to the effect that his mother was not sick, is entitled to no weight; that the state of health can be determined only by an expert. There are doubtless cases to which such rule should be applied, as illustrated in the case of Taylor v. Shuffield, 52 S.W.(2d) 788, by the Austin Court of Civil Appeals. But in the case of Vann v. Nat. Life & Accident Insurance Co., 24 S.W.(2d) 347, by section A of our Commission of Appeals, the evidence of a husband and daughter, who had opportunities of observation, tending to show general good health during a period in controversy, was considered and given weight.

We see no reason why the laymen otherwise competent to testify who have had opportunity to observe may not give their opinion that a given individual is in good health. In the case before us the representative of the company made no demand for a medical examination which may or may not have disclosed some hidden cause of ultimate loss of life, but only sought, considered, and acted upon the statements of plaintiff in the suit. It is to be remembered also that the appellant company itself introduced Thomas Stewart as the witness to prove that the insured was not in good health. The answer was not objected to, nor stricken out upon the motion of appellant, and we see no supportable reason for holding that it was not evidence of probative force. It is also to be remembered that the burden of establishing its defense was upon appellant; that the evidence of Dr. Goldberg was based largely, if not altogether, upon hypothetical questions which embraces the assumption that Fannie Stewart had high blood pressure, a fact to support which no witness testified; and that Dr. Greenwood's testimony is by no means conclusive that she was affected with high blood pressure or any other ailment which brought about her death. So that, on the whole, we do not feel justified in holding that the verdict of the jury in appellee's favor on the vital issue presented, approved as it was by the trial court, is unsupported by the evidence.

It follows that the judgment below should be in all things affirmed.